IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BONNIE KELLY, | ) | |
| Plaintiff, | ) | 8:10CV245 |
| v. | ) | |
| OMAHA HOUSING AUTHORITY, STANLEY TIMM, Executive Director, in his individual and official capacity, and DOES 1-50, | ) | MEMORANDUM AND ORDER |
| Defendants. | ) | |

This matter is before the court on the defendants' motion for summary judgment (Filing No. 46). This is an action for discrimination in employment. In his complaint, the plaintiff asserted claims under Title VII, 42 U.S.C.§2000e, *et seq.*; the Civil Rights Act, 42 U.S.C. § 1981; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §626, *et seq.*; and the Equal Pay Act, 29 U.S.C. §§ 206(d) and 216(b), in connection with her demotion and subsequent termination of employment by the Omaha Housing Authority ("OHA"). A pretrial order has been entered in this case and supersedes the pleadings. Filing No. 101, Pretrial Order at 3-4; *U.S. v. $84,615 in United States Currency,* 379 F.3d 496, 499 (8th Cir. 2004) (noting that issues identified in the pretrial order supersede the pleadings). The plaintiff has withdrawn her ADEA claim and has apparently abandoned her Equal Pay Act claims. See Filing No. 57, Plaintiff's Brief at 27; Filing No. 101, Pretrial Order at 3-4.

The defendants argue that Ms. Kelly's § 1983 claim against the OHA is subject to dismissal because Kelly cannot show that her injury was caused by a policy or custom of

the OHA. Further, defendants argue that Kelly has not provided direct evidence that the defendants engaged in intentional discrimination in that a purported comment by defendant Timm is nothing more than a stray remark that does not establish a causal link between the comment and the adverse decision. Further, the OHA argues that Kelly cannot show that any alleged "demotion" amounted to an adverse employment action. Defendants also argue that Kelly cannot establish that the OHA engaged in intentional discrimination under the *McDonnell Douglas* framework.[1] In connection with that argument, defendants first argue that Kelly cannot establish a prima facie case. Alternatively, defendants argue that the OHA has shown that Kelly's termination was based upon a legitimate, employment-related and nondiscriminatory factor: Kelly was terminated because she did not have the proper analytical and interpersonal skill set to bring about changes the OHA wanted to implement. It also argues that Kelly cannot demonstrate that the OHA's proffered reason for her termination is a pretext for discrimination.

I. BACKGROUND

In support of the motion, the defendants offer affidavits and the deposition testimony of Stanley Timm and Timothy Bohling. Filing No. 49, Index of Evid., Exs. 1-5. In opposition, the plaintiff submits Kelly's affidavit and other documentary evidence, as well as deposition testimony. See Filing No. 76, Affidavit of Bonnie Kelly ("Kelly Aff."); Filing No. 60, Exhibit A-1, Bonnie Kelly's Application(Doc # 60-1); Exhibit A-2, Email from Frank Brown request to review contracts prior to approval (Doc # 60-2), Exhibit A-3, Email from Robert Fadoni (Doc # 60-3), Exhibit A-4, Timothy Bohling Email (Doc # 60-4); Filing No.

---

[1]*See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973).*

67 & Filing No. 68, Exhibit A-5, Excerpts of OHA Board of Directors Minutes; Filing Nos. 74 & 75, Exhibit B, Timothy Bohling's Deposition Excerpts.

The parties agree on the following facts. Ms. Kelly was an at-will employee of the OHA. Kelly's employment was terminated by the OHA's Executive Director, Stanley Timm, on June 30, 2009. The "planning department," which is not formally a department at the OHA, is part of the Capital Improvements and Development Department and has been since 2005. Mr. Timm first assumed the position of Executive Director on an interim basis in January of 2007 and was awarded a six-month contract as Executive Director in late 2007. The OHA hired Mr. Bohling as Director of Finance and Procurement in June 2008. At the time Bohling was hired, the employees, such as Ms. Kelly, who had reported to Mr. Timm prior to his assignment as Executive Director, were directed to report to Mr. Bohling. The ability to work with others in a cooperative manner was an essential aspect of Ms. Kelly's position. *See* Filing No. 48, defendants' brief at 6-8, statement of material facts; Filing No. 57, plaintiff's amended brief at 3-12, statement of uncontroverted facts. It is also uncontroverted that Stanley Timm was the decisionmaker in Ms. Kelly's termination. See Filing No. 48, a defendants' brief at 12. Further, there is no dispute that Mr. Bohling was hired to oversee the Procurement Department and that Ms. Kelly was required to report to him. *Id.* at 15. Undisputed evidence also shows that at the time of Kelly's termination, she was employed as Procurement and Contracts Director and received a yearly salary of $62,980.82. Filing No. 47, Index of Evid., Ex. 3, response to request for admissions at 5.

The court has reviewed the evidence submitted by the parties in support of and opposition to the motion. The evidence shows that Timothy Bohling, Kelly's supervisor at the time of her termination, testified that he did not know what led to Kelly's termination,

3

and that he was not consulted, nor he did not have any input as to the decision, although, as her immediate supervisor, he had the authority to make recommendations in connection with the decision.  Filing No. 49, Index of Evid., Ex. B, Deposition of Timothy Bohling ("Bohling Dep.") at 50; Ex. C, deposition of Stanley Timm ("Timm Dep.") at 136.  Also, he did not document any misconduct by Kelly.  *Id.*  Bohling also testified that he did not receive any complaint against or about Kelly from any person who worked under her.  *Id.* at 51.  Also, he had not been notified by any person that Kelly had problems with any director.  *Id.* at 46.  Bohling also testified that Bob Fadoni, Barry Long and Lloyd Beasley were all males who were directors of OHA and did not have to report to Bohling or another director.  *Id.* at 56-58.  Kelly, on the other hand, was a director and had to report to Bohling.  *Id.* at 56-57.  Managers, other than Kelly, who had been reporting to Timm as Director of Finance, were required to report to Bohling as Director of Finance after Timm became the executive director.  *Id.*  All of those managers are white males.  *Id.*

Stanley Timm testified that when Bohling was employed and made supervisor over Kelly, her job duties were the same.  Filing No. 49, Ex. 4, Timm Dep. at 132.  Kelly's last performance evaluation was done by Stanley Timm and she was performing above satisfactory.  *Id.* at 19.  He testified he later received complaints about Kelly, but did not document them.  *Id.* at 30.  Timm was familiar with OHA personnel policies and procedures regarding termination.  *Id.* at 112.  There is evidence that those policies were not followed with respect to Kelly's termination.  Filing No. 76, Kelly Aff. at 9-10.  In her affidavit Kelly states that "Timm made it known to me that he had a problem with a woman heading the construction department."  *Id.* at 3.  Timm denies the accuracy of that statement.  Filing No. 49, Ex. 4, Timm Dep. at 122.  Timm testified he created a planning and construction

4

department which was headed by a white male. *Id.* In his deposition, Timm also disputed the veracity of several other allegations made by Kelly. *Id.* at 125-26.

## II. DISCUSSION

### A. Law

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, — F.3d —, —, 2011 WL 2135636, *8 (8th Cir. June 1, 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* ( quoting *Celotex*, 477 U.S. at 324). On a motion for summary judgment, the "'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Id.* (quoting *Ricci v. DeStefano*, — U.S. —, —, 129 S. Ct. 2658, 2677 (2009)). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from

5

the facts are jury functions, not those of a judge. *Id.* The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.*

There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial. *Torgerson,* slip op. at 14 (quoting *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)). Nevertheless, "[a]t the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). The court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* at 248. To be material, a fact "must affect the outcome of the lawsuit under governing law." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's favor]." *Id.* at 255. "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 250.

Title VII makes it an unlawful employment practice for an employer to terminate any individual because of such individual's race or sex. 42 U.S.C. § 2000e–2(a)(1). A plaintiff may survive a defendant's motion for summary judgment in an employment discrimination case in one of two ways: the first is by proof of "direct evidence" of discrimination and the

second is by creating the requisite inference of unlawful discrimination through the *McDonnell Douglas* analysis. *Torgerson,* 2011 WL 2135636 at *8. Direct evidence "is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Id.* (quoting *Griffith v. City of Des Moines,* 387 F.3d 733, 736 (8th Cir.2004)) (noting that "direct" refers to the causal strength of the proof, not whether it is "circumstantial" evidence). A plaintiff with strong direct evidence that illegal discrimination motivated the employer's adverse action does not need the three-part *McDonnell Douglas* analysis to get to the jury, regardless of whether his strong evidence is circumstantial. *Id.* But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must present sufficient evidence to create the required inference of unlawful discrimination through the *McDonnell Douglas* analysis, including sufficient evidence of pretext." *Id.* (quoting *Griffith,* 387 F.3d at 736). When the record on summary judgment is fully developed, the "court need only decide whether, on the record as a whole, there is a genuine issue for trial on the ultimate question of discrimination *vel non.*" *Torgerson,* 2011 WL 2135636, slip op. at 32 (Colloton, J., concurring).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. *Id.* at *11. In a demotion/termination context, an applicant must show she (1) is a member of a protected class; (2) was qualified to perform her job; (3) suffered an adverse employment action; and (4) was treated differently than similarly situated employees who were not members of the protected class. *See Wilkie v. Department of Health and Human Servs.,* 638 F.3d 944, 954-55 (8th Cir. 2011). An

adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *Id.* at 955. "'The burden of establishing a prima facie case of disparate treatment is not onerous.'" *Torgerson*, 2011 WL 2135636, *slip op.* at *11 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). A plaintiff need not "prove her *relative* qualifications to meet her prima facie burden." *Id.,* (emphasis in original).

The burden of production then shifts to the defendant "to 'articulate a legitimate, nondiscriminatory reason for not hiring [her]." *Torgerson*, 2011 WL 2135636, slip op. at *11. "'The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence.'" *Id.* (quoting *Floyd v. State of Mo. Dep't of Soc. Servs.*, 188 F.3d 932, 936 (8th Cir.1999)).

The ultimate burden then falls on the plaintiff to produce evidence sufficient to create a genuine issue of material fact regarding whether the defendant's proffered nondiscriminatory justifications are mere pretext for intentional discrimination. *Id.* The plaintiff's "burden to show pretext merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination." *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext: A plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact; or may show pretext by persuading the court that a prohibited reason more likely motivated the employer. *Torgerson*, 2011 WL 2135636 at *12 (noting that "[e]ither route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually

8

motivated the employer's action"). "Proof of pretext, coupled with a strong prima facie case, may suffice to create a triable question of fact." *Id.*

Statements by nondecisionmakers are not direct evidence. *Id.* at *9. However, statements by those closely involved in hiring decision may be direct evidence. *Id.* Direct evidence does not include statements by decisionmakers that are facially and contextually neutral. *Id.* A remark by a decisionmaker, in order to be direct evidence of sex discrimination, must show a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action. *Id.*

"Respondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). A municipality may be held liable under § 1983 for a rights violation when either the municipality had an unlawful policy or practice that caused the rights violation, or a municipal "policymaker" directly caused the rights violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000).

    B.  Analysis

The court has reviewed enough of the evidence submitted in connection with the motion to ascertain that there are genuine issues of material fact precluding summary judgment in this case. The defendants' argument that OHA cannot be liable for any violation because there is no evidence of a policy or custom is without merit. The evidence shows that Stanley Timm was a municipal policymaker who directly caused the alleged rights violation.

Further the court finds there is a genuine issue of material fact with respect to alleged statements by Timm and others. Whether the statements were made and whether they amount to anything more than "stray remarks" is for the jury to decide. It is unnecessary for the court to resolve whether the plaintiff met a "direct evidence" standard or satisfied each step of the *McDonnell Douglas* burden-shifting framework, since this court need only decide whether, on the record as a whole, there is a genuine issue for trial on the ultimate question of discrimination.

Similarly, whether the changes occasioned by the hiring of Bohling amounted to an adverse employment action in the nature of a demotion presents a jury question. The plaintiff has come forward with some evidence that others not in Kelly's protected class were treated differently than Kelly. Further, there is evidence from which a jury could infer that the OHA's purported nondiscriminatory reason is not worthy of merit. Resolution of the issues will involve credibility assessments. Accordingly, the court finds the defendants' motion for summary judgment should be denied.

IT IS ORDERED that the defendants' motion for summary judgment (Filing No. 46) is denied.

DATED this 8th day of June, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.