IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BONNIE KELLY,<br><br>              Plaintiff,<br><br>   v.<br><br>OMAHA HOUSING AUTHORITY,<br>STANLEY TIMM, Executive Director in his<br>individual and official capacity,<br><br>             Defendants.<br>_____<br><br>BONNIE KELLY,<br><br>              Plaintiff,<br><br>   v.<br><br>HOUSING AUTHORITY OF THE CITY OF<br>OMAHA and STANLEY TIMM, Executive<br>Director in his individual capacity,<br><br>             Defendants. | 8:10CV245<br><br>MEMORANDUM AND ORDER<br><br><br><br><br><br><br>8:11CV192<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the plaintiff's motions for reconsideration of the defendants' Rule 50 motion or for a new trial of the plaintiff's retaliation claim, Filing No. 142 in 8:10CV245 and Filing No. 63 in 8:11CV192, and defendants' motions for judicial notice, Filing No. 151 in 8:10CV245 and Filing No. 64 in 8:11CV192.[1] These are consolidated employment discrimination actions for race and gender discrimination, retaliation and deprivation of First Amendment rights brought pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act, 42 U.S.C. §§ 1981 and 1983, and the

---

[1] The plaintiff joins in the defendants' motion to take judicial notice of the record and trial testimony and it will be granted. See Filing No. 152, Plaintiff's Reply Brief at 2.

Nebraska Fair Employment Act, Neb. Rev. Stat. § 48-1114, in connection with defendants' demotion, subsequent termination, and alleged discriminatory failure to rehire the plaintiff.

The consolidated action was tried to a jury from January 17, 2012, to January 23, 2012. At the close of the plaintiff's case, the defendants moved for judgment as a matter of law ("JAML") on all of the plaintiff's claims. The court denied the motion with respect to the plaintiff's race and gender discrimination claims, but took the motion under advisement with respect to the plaintiff's First Amendment retaliation claim. At the close of all the evidence, the court granted the defendants' renewed Rule 50 motion with respect to the First Amendment retaliation claim. The court found the plaintiff could not establish the requisite nexus between the expression of speech at issue and the plaintiff's termination eighteen months later. The plaintiff's race and gender discrimination claims were submitted to the jury and the jury returned a verdict in favor of the defendant. Filing No. 135.

The plaintiff challenges the court's ruling on the retaliation claim and requests a new trial on that claim. She argues that continuing adverse actions were taken against her between the protected speech and her termination. The plaintiff does not challenge the jury's verdict on the discrimination claims.

**I.  FACTS**

At trial, Ms. Kelly testified that she began working at the Omaha Housing Authority in 1998 as a litigation paralegal. *See* Filing No. 146 in 8:10CV245 and Filing No. 67 in 8:11CV192, Transcript of Trial Testimony of Bonnie Kelly at 3. She became procurement contract coordinator in 2005 and procurement contract director in 2006.

*Id.* at 5-7. In January 2008, she voiced opposition to the actions of Frank Brown, a city council member, with respect to a snow contract, to her supervisor, Stanley Timm. *Id.* at 26, 112. She testified she discussed what she "saw was improprieties of Frank Brown's interference with federal contracts," in that Frank Brown worked for an entity known as Housing in Omaha ("HIO") that Kelly regarded as a "scam." *Id.* at 25, 110. She told Timm she thought the conduct violated federal law and was a conflict of interest. *Id.* at 27, 110.

Tim Bohling was hired in May 2008 as the Director of Finance and Procurement and the evidence shows he was Ms. Kelly's superior. *Id.* at 17, 64-67. She stated that managers later started to "go around" her and submit contract proposals to Tim Bohling. *Id.* at 17. She testified she did not think Bohling was qualified because he did not know compliance regulations and made mistakes. *Id.* at 38-39. She trained Bohling with respect to HUD procurement policies and procedures and federal regulations and requirements for contracts. *Id.* at 31.

In June 2008, Frank Brown, then a city councilman, asked her to send contracts to him for review. *Id.* at 24. She testified that in October 2008, she was restricted from entering the building at night or on weekends, and her duties were reduced in that she was excluded from meetings she had attended prior to the hiring of Tim Bohling. *Id.* at 56-57. She testified that up until her termination, George Achola, OHA's general legal counsel, would "bully," "physically hit," and "intimidate" her. *Id.* at 27. She also testified that Time Bohling spoke to her in an unprofessional manner. *Id.* at 35.

Ms. Kelly was terminated in June 2009. *Id.* at 80. She testified that sometime in 2008 she had contacted HUD and the Board of Commissioners with complaints of

3

improprieties. *Id.* at 54. After she was terminated, she contacted the Board of Commissioners, city officials and HUD with complaints of impropriety at the Omaha Housing Authority. *Id.* at 108-09. She also testified that the retaliation was "generated" by her conduct in refusing to follow Frank Brown's order to cancel a snow removal contract and refusal to allow Brown to review contracts before approval. *Id.* at 112. She characterized her protected speech as concern about corruption and the relationship between HIO (the company Brown worked for) and OHA. *Id.* at 110, 113.

## II. LAW

Under the Federal Rules, "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party, and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. Rule 50(a) (1).

Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence. *United States v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment. *Id.* To prevail on a Rule 59(e) motion, the movant must show that (1) the evidence was discovered after trial; (2) the movant exercised due diligence to discover the evidence before the end of trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new trial considering the evidence would probably produce a different result. *Id.*; *see United*

4

*States Xpress Enters. Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 815 (8th Cir. 2003) (discussing factors one must show to prevail under Rule 60(b)(2), which are the same under Rule 59(e)).

New trials based on the weight of the evidence are generally disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The evidence must be viewed in the light most favorable to the nonmoving party while assuming as proven all facts her evidence tends to show, resolving all evidentiary conflicts in her favor, and according her all reasonable inferences. *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 929 (8th Cir. 2010).

First Amendment retaliation claims are analyzed under the same framework as claims of retaliation under Title VII. *Okruhlik v. Univ. of Ark.* 395 F.3d 872, 878 (8th Cir. 2005). In order to present a prima facie case of retaliation under 42 USC § 1983, a plaintiff must produce evidence showing: (1) that she engaged in activity protected by the First Amendment; (2) that the defendants took an adverse employment action against her; and (3) that her protected speech was a substantial or motivating factor in the adverse employment action. *Mount Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977); *Davison v. City of Minneapolis*, 490 F.3d 648, 655 (8th Cir. 2007).

A public employee's speech is protected by the First Amendment if the employee speaks as a citizen and addresses a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 411 (2006). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer

discipline." *Id.* at 421-22 (noting that "[r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."); *see also* Bonn v. City of Omaha, 623 F.3d 587 (8th Cir. 2010). An adverse employment action under Title VII must be "materially adverse," not merely trivial in nature. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006); *see also* Jackson v. United Parcel Service, Inc., 548 F.3d 1137, 1142 (8th Cir. 2008).

It is well settled that an employee can establish a causal link between protected activity and adverse action by the close timing of the two events. Hite v. Vermeer Manufacturing Company, 446 F.3d 858, 866 (8th Cir. 2006); Eliserio v. United Steelworkers of Amer., 398 F.3d 1071, 1079 (8th Cir. 2005); Bassett v. City of Minneapolis, 211 F.3d 1097, 1105 (8th Cir. 2000); Mathews v. Trilogy Comms., Inc., 143 F.3d 1160, 1166 (8th Cir. 1998). However, generally, more than a temporal connection is required to present a genuine factual issue on retaliation and only in cases where the temporary proximity is very close can the plaintiff rest on it exclusively. Tyler v. University of Arkansas Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011). As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation. *Id.* The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months. *Id.* The Eighth Circuit Court of Appeals has held that "an interval as brief as two months did not show causation for purposes of establishing a retaliation and that a two-week interval was 'sufficient, but barely so.'" *See id.* (quoting Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th

6

Cir. 2006) Further, intervals of six and seven months are not sufficiently contemporaneous to indicate a causal connection or to create an inference of retaliation. *Id.*

### III. DISCUSSION

The court finds that the evidence at trial establishes that the protected speech, that qualifies as speech on a matter of public concern, at issue, was Ms. Kelly's discussion with her superiors regarding alleged improprieties in connection with the snow removal contract in January 2008. There is some evidence that she may have complained to either HUD or city officials in 2008. It is undisputed that she complained of improprieties to HUD and/or other agencies after she was terminated. Further, the adverse employment action at issue is her termination. The record shows that Kelly suffered no pay decrease nor did her job description change; the only difference in the terms and conditions of her employment was that she reported to Tim Bohling instead of Stanly Timm. The actions that the plaintiff characterizes as continuing and escalating instances of retaliation, such as restricted access to the building, change in duties or assignments and changes in chain of command, are nothing more than ordinary workplace slights that do not rise to the level of materially adverse employment actions.

Although the plaintiff now contends that she continuously voiced her objections with respect to Frank Brown's involvement, the evidence does not support that contention. As the record stands, Kelly relies on her allegation that she was terminated because she complained to superiors about Frank Brown's involvement in the cancellation of a snow contract. Assuming that speech was protected, it clearly occurred in January of 2008, approximately eighteen months before Ms. Kelly's

termination. Even if her testimony that she voiced similar objections to persons inside and outside OHA in 2008 is credited, that speech, if protected, would have occurred at least six months before her termination, if not longer.

The court finds the plaintiff's motion for new trial or for reconsideration of the court's ruling on the First Amendment retaliation issue should be denied. The court stands by its ruling that the adverse employment action at issue is the plaintiff's termination and that plaintiff did not establish a nexus between the protected activity and the termination. In any event, the plaintiff has not established any nexus between her exercise of protected speech in 2008 and any other allegedly adverse actions. The evidence shows that, although Kelly may have continued to speak out against, or voice objection to, conditions at OHA while Tim Bohling was her supervisor, those complaints were not on matters of public concern.

The plaintiff has not shown manifest injustice or errors of law or fact, nor has she produced any newly discovered evidence. The plaintiff's motion rehashes arguments previously rejected by the court. Accordingly, the courts find the plaintiff's motions should be denied.

IT IS ORDERED:

1. The defendants' motions for judicial notice (Filing No. 151 in 8:10CV245 and Filing No. 72 in 8:11CV192) are granted.

2. The plaintiff's motions for reconsideration and a new trial (Filing No. 142 in 8:10CV245 and Filing No. 63 in 8:11CV192) are denied.

3. Judgment will be entered in accordance with the jury's verdict in a separate order this date.

DATED this 14th day of June, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge